Elayna J. Youchah, Bar # 5837
youchahe@jacksonlewis.com
Steven C. Anderson, Bar # 11901
steven.anderson@jacksonlewis.com
**JACKSON LEWIS P.C.**
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KRYSTAL CAMPELL, SHANA RAGIN, ASHLEIGH PARK, and JANE DOE DANCER, I through V, individually, and on behalf of Class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>DEAN MARTIN DR – LAS VEGAS, LLC, a Nevada Limited Liability Company (d/b/a LARRY FLYNT'S HUSTLER CLUB, a business organization form unknown), LAS VEGAS BISTRO, LLC, a Nevada Limited Liability Company, MODERN BOOKKEEPING, INC., a Michigan Corporation, DOE CLUB OWNER, I-X, DOE EMPLOYER, I-X, ROE CLUB OWNER, I-X, and ROE EMPLOYER, I-X,<br><br>Defendants. | Case No. 2:15-cv-00452-GMN-NJK<br><br><br><br>**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY THE ACTION PENDING ARBITRATION** |

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants Dean Martin Dr – Las Vegas, LLC[1], Las Vegas Bistro, LLC, and Modern Bookkeeping, Inc. ("Bistro" or "Defendants") move the Court for an order dismissing Plaintiffs' First Amended Complaint and compelling Plaintiffs to submit their dispute to binding arbitration, and for an award of fees and costs incurred in litigating the arbitrability of this dispute.

---

[1]     Plaintiff incorrectly captioned this case as "DEAN MARTIN DR - LAS VEGAS, LLC, a Nevada Limited Liability Company (d/b/a LARRY FLYNT'S HUSTLER CLUB, a business organization form unknown)." Las Vegas Bistro, LLC, does business as Larry Flynt's Hustler Club. "Las Vegas Bistro, LLC" is also listed on the Dancer Performance Leases signed by each Plaintiff. *See* Exhibits 1-3, p. 5.

This Motion is based on the following memorandum of points and authorities, the pleadings and papers on file with the Court, the attached exhibits and any oral argument the Court may deem appropriate.

Dated: March 18, 2015.

JACKSON LEWIS P.C.

_____/s/ Elayna J. Youchah_____
Elayna J. Youchah, Bar No. 5837
Steven C. Anderson, Bar No. 11901
3800 Howard Hughes Parkway, Ste. 600
Las Vegas, Nevada 89169

*Attorneys for Defendants*

## I.    **INTRODUCTION**

Plaintiffs Ashleigh Park ("Park"), Krystal Campbell ("Campbell"), and Shana Ragin ("Ragin") (collectively "Plaintiffs") are current and former entertainers who performed at Las Vegas Bistro, LLC ("Bistro"). Each of these Plaintiffs executed a Dancer Performance Lease and Status Selection contract (the "Agreement" or "Agreements"). *See* **Exhibits 1-4** to the Anderson Declaration, attached to this Motion as **Exhibit A**.[2]  Pursuant to the plain terms of the Agreements, the parties agreed that all disputes arising from their business relationship would be submitted to arbitration. For this reason, this action is not properly before the Court.

The Agreements contain a conspicuous mandatory arbitration clause that subjects all disputes arising from an entertainer's performance at Bistro to binding arbitration. *Id.* ¶ 21. The arbitration proceedings are to be governed by the Federal Arbitration Act ("FAA") (9 U.S.C. § 1 *et seq.*). *Id.* The Agreements also contain a clause through which entertainers agreed that they would not seek class or collective action status or participate in a class or collective action against Bistro. *Id.*

---

[2]    Unless otherwise specified, all exhibit citations are made to the Exhibits attached to the Anderson Declaration. Exhibits 1-3 may be considered as part of the motion to dismiss because they are relied on in, and an integral part of, the First Amended Complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (superseded on unrelated grounds) ("A district court . . . may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleading.").

Recent United States Supreme Court and Ninth Circuit precedent holds that arbitration agreements, such as the one applicable to this action, are enforceable and that the FAA preempts state law and public policy that would dictate a contrary result. Applying this precedent, the Federal District Court for the District of Nevada has also upheld the validity of arbitration clauses in the wage and hour context. There is no basis on which to depart from this law. Plaintiffs cannot bring their claims in this or any other court. The Court should, therefore, compel arbitration and dismiss this action or, alternatively, stay this action pending arbitration proceedings.

## II.    STATEMENT OF FACTS

Plaintiffs are professional exotic dance entertainers who filed suit (on behalf of themselves and a purported class of similarly situated individuals) claiming that Bistro misclassified them as "independent contractors" instead of employees. (First Amend. Compl., Doc 1, Exhibit 1 at ¶¶ 31-32.) Through the First Amended Complaint Plaintiffs seek to supplement the substantial income they earned while performing for their own benefit on Bistro's premises by claiming that they are entitled to additional minimum wage payments. *Id.* at ¶¶ 37-38. They also allege that they are entitled to a return of a portion of the mandatory dance fees that they collected from their patrons and which they were contractually obligated to pay Bistro for the right to perform on its premises. *Id.* at ¶ 39.

Plaintiffs each agreed to provide their dance entertainment services at Bistro's establishment pursuant to the terms of a Dancer Performance Lease, *i.e.* the Agreement. *See* Exhibits 1 (Park Agreement), Exhibit 2 (Campbell Agreement), and Exhibit 3 (Ragin Agreement). All three of these Agreements contain the following arbitration clause:

> 21.    **Arbitration/Attorney Fees and Costs/Waiver of Class Actions**. Any controversy, dispute, or claim (In this paragraph 21, collectively "Claim") arising out of this Lease or out of entertainer performing and/or working at the club at any time, whether contractual, in tort, or based upon common law or statute, shall be exclusively decided by <u>binding arbitration</u> held pursuant to the Federal Arbitration Act (the "FAA").

Exhibits 1-3, p. 3-4 (emphasis in original).

The Agreements continue:

> B.     Entertainer agrees that all claims by her against the club . . . shall be brought and maintained by her individually; that she will not consolidate her claim with those of any other individual; that she will not seek class or collective action treatment for any claim that she may have; and that she will not participate in any class or collective action against the club.

*Id.* at ¶ 21.  Thus, Plaintiffs agreed to submit *any* controversy, dispute, or claim to an arbitrator.  *Id.* at 3.  Plaintiffs further agreed to neither seek class treatment nor participate in a class action against Bistro.  *Id.*

On February 23 and 26, 2015, Plaintiffs' counsel was provided with a copy of the Agreements signed by each of the named Plaintiffs.  **Exhibit 5**.  Having received no response, on March 17, 2015, Defendants' counsel again contacted Plaintiffs' counsel to determine whether Plaintiffs would honor the Agreements and consent to arbitration.  *Id.*  Plaintiffs' counsel still did not respond.  As a consequence, Defendants have filed this Motion to compel arbitration and dismiss the action or, alternatively stay this action pending arbitration.

## III.   ARGUMENT

### A.     The Court Should Compel Arbitration

The Court should compel the parties to submit to arbitration because the Federal Arbitration Act reflects an overwhelming preference favoring arbitration, the arbitration clause at issue in the Agreement is valid and enforceable, and because there are no barriers to enforceability such as unconscionability.

### 1.     The Federal Arbitration Act Requires Rigorous Enforcement

The FAA states that a written agreement "to settle by arbitration a controversy" arising out of a contract or transactions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA reflects an "emphatic federal policy" in favor of arbitration. *Marmet Health Care Center v. Brown*, -- U.S. -- , 132 S.Ct. 1201, 1203 (2012); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (citing omitted).  "The FAA was designed to override judicial reluctance to enforce arbitration agreements, relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Under the

1   FAA, "*any doubts concerning the scope of arbitrable issues should be resolved in favor of*
2   *arbitration.*"   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (citation
3   omitted) (emphasis added).[3]

4       By enacting 9 U.S.C. § 2 "Congress declared a national policy favoring arbitration and
5   withdrew the power of the states to require a judicial forum for the resolution of claims which the
6   contracting parties agree to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10
7   (1984).   The FAA is the supreme law of the land for an arbitration clause in an agreement
8   "affecting commerce," and "provides 'for the enforcement of arbitration agreements within the
9   full reach of the commerce clause.'"   *Citizens Bank v. Alfabco, Inc.*, 539 U.S. 52, 56 (2003)
10   (citations omitted).   The FAA, therefore, "preempts any contradictory provision of state law."
11   *Stutler v. T.K. Contractors*, 484 F.3d 343, 345 (6th Cir. 2006) (citing *Circuit City Stores v.*
12   *Adams*, 532 U.S. 105, 111-112 (2001)).   More specifically, "Federal law preempts state law on
13   issues of abitrability."   *Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.*, 925
14   F.2d 1136, 1139 (9th Cir. 1991).

15       The FAA is emphatically enforced and only set aside in exceptional circumstances
16   because it is a substantive rule applicable in state and federal courts. *Southland Corp.*, 465 U.S.
17   at 11; *Zabelny v. Cashcall, Inc.*, 2014 U.S. Dist. LEXIS 2626 *16 (D. Nev. Jan. 8, 2014).
18   Accordingly, the United States Supreme Court holds that there are only two bases on which to
19   deny enforceability.   The first is for certain maritime contracts, while the second is upon "grounds
20   as exist at law or in equity[.]" *Southland Corp.*, 465 U.S. at 11.   As detailed below, there are no
21   legal or equitable grounds on which to deny the arbitration clause's enforceability.

22
23
24   _____
[3]     Similarly, Nevada's UAA provides that an "agreement contained in a record to submit any
25   . . . controversy arising between the parties is valid, enforceable, and irrevocable except upon a
ground that exists at law or in equity for the revocation of a contract." NRS 38.219(1).   Nevada
26   courts have also recognized that "[s]trong public policy favors arbitration because arbitration
generally avoids the higher costs and longer time periods associated with traditional litigation."
27   *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004).   In addition, "Nevada
courts encourage arbitration and liberally construe arbitration clauses in favor of granting
28   arbitration." *State Ex rel. Masto v. Second Judicial Dist. Court*, 125 Nev. 37, 44, 199 P.3d 828,
832 (2009) (citing *Phillips v. Parker*, 106 Nev. 415, 417 (1990)).

JACKSON LEWIS P.C.
LAS VEGAS

2.    **The Scope Of The Arbitration Clause Contained In The Parties' Agreement Encompasses The First Amended Complaint's Claims And The Arbitration Clause Is Valid And Enforceable**

The Court should compel arbitration because (a) the arbitration clause is an integral part of the respective Agreements, (b) Plaintiffs' claims in this case fall within the arbitration clause's scope, and (c) the clause is not substantively or procedurally unconscionable. The FAA dictates that arbitration should be compelled when "(1) there is an agreement between the parties to arbitrate; (2) the claims at issue fall within the . . . agreement's scope; and (3) the arbitration agreement is valid and enforceable." *Ainsworth v. Paramount Residential Mortgage Grp., Inc.*, No. 2:11-CV-0007-LRH-PAL, 2011 WL 1496677, at *1 (D. Nev. Apr. 19, 2011) (citing *Lifescan, Inc. v. Permier Diabetic Services, Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004)).  In fact, a recent decision issued by the U.S. District Court for the District of Nevada, where the facts were strikingly similar to the present case, the court compelled arbitration and dismissed the action based on a clause contained in "an employee[4] acknowledgment form" the plaintiff had signed. *Zabelny*, 2014 U.S. Dist. LEXIS 2626 at *4.

Specifically, like the case at bar, the *Zabelny* action was initially filed in state court and sought recovery of wages under state and federal law and also sought class treatment. *Id.* at *2-3. The defendant removed it to federal court and immediately moved to compel arbitration.  *Id.* After restating the law favoring arbitration under the FAA, the court turned to the agreement. The "employee acknowledgment form," which was attached to the motion, contained a clause that in consideration of obtaining employment, the employee would "agree that any dispute or controversy arising out of, relating to, or concerning [his] employment shall be settled by arbitration[.]" *Id.* at *21.  This agreement also provided that employees "understand and agree that all disputes including any class or representative claims . . . shall be resolved by binding

---

[4]      The United States Supreme Court has unequivocally held that the FAA is equally applicable in the wage and hour and employment context. *Circuit City*, 532 U.S. at 122-123; *Gilmer*, 500 U.S. at 26-35. The Agreements at issue in this case are not employment agreements, but are similar in that they are labor service contracts.

1    arbitration only on an individual basis." *Id.* at \*22.  Thus, the court concluded that the first two

2    factors articulated in *Ainsworth* had been met, *i.e.* the parties generally agreed to arbitrate and the

3    claims at issue fell within the agreement's scope. *See* 2011 WL 1496677 at \*1.

4           The court then turned to whether the agreement was valid and enforceable, undertaking a

5    procedural and substantive unconscionability analysis. *Zabelny*, 2014 U.S. Dist. LEXIS 2626 at

6    \*25.  A party who opposes arbitration has the burden to show it is not enforceable. *Id.* at \*26.

7    "Under Nevada law, a contract provision is unenforceable due to unconscionability only if it is

8    both procedurally and substantively unconscionable." *Id.* at \*25 (citing *D.R. Horton v. Green*,

9    120 Nev. 549, 96 P.2d 1159, 1162 (2002)).[5]  The plaintiff in *Zabelny* argued the agreement was

10   invalid because plaintiff did not sign the agreement until after accepting employment, and

11   unconscionable "under the FLSA and NLRA, because it contains a collective action waiver" and

12   because the arbitration obligations were not reciprocal. *Id.* at \*27.  Plaintiff's arguments did not

13   persuade the court.

14          The court explained that "a plain reading of the arbitration clause provides that the

15   agreement to arbitrate" applied equally to the defendant. *Id.* at \*28-29.  Regarding the class

16   waiver, plaintiff argued that the right to bring collective actions under the FLSA, for example,

17   created a substantive right that should override the FAA. *Id.* at \*34.  Relying on U.S. Supreme

18   Court and Ninth Circuit precedent, the court explained that collective actions are a procedural, not

19   substantive right, and that "[a]ll of the courts of appeals that have considered [the issue] have

20   concluded that arbitration agreements containing class waivers are enforceable[.]" *Id.* at \*34-38

21   (citing *Richards v. Ernst & Young*, 734 F.3d 871 (9th Cir. 2013); *American Express Co. v. Italian*

22   *Colors Restaurant*, -- U.S. --, 133 S.Ct. 2304, 2308-09 (2013); and *AT&T Mobility LLC v.*

23   *Concepcion*, -- U.S. --, 131 S.Ct. 1740, 1745 (2011)).  The court, therefore, concluded that an

24   arbitration agreement with a class action waiver is valid and enforceable under the FAA. *Id.* at

25   \*44.  The *Zabelny* analysis, when applied here, yields the same result.

26

27

28
_____
[5]     The Agreements all provide, "**Governing Law**. This [Agreement] shall be interpreted
pursuant to the laws of the State of Nevada." Exhibits 1-3, ¶ 21.

1

               *i.*      *Defendants Have Satisfied The First Two Prongs Under Ainsworth*

2

       The first two factors—(1) the litigants are parties to an agreement that (2) has an

3

arbitration clause that covers the claims—are undoubtedly satisfied. Plaintiffs and Defendants are

4

parties to the Agreements. **Exhibits 1-3.** These Agreements contain an arbitration clause that

5

provides: "ANY CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21,

6

COLLECTIVELY 'CLAIM') ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER

7

PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME." Exhibits 1-3, ¶ 21.

8

Undoubtedly, the First Amended Complaint addresses a dispute or claim that arises from the

9

Plaintiffs' performances at Bistro. *See* Doc 1, Exhibit 1.[6] Thus, there is no legitimate dispute that

10

the first two *Ainsworth* factors are met in this case.

11

               *ii.*     *The Agreements Are Valid And Enforceable*

12

       An agreement that contains a clause requiring the parties to submit disputes to arbitration

13

is a contract and subject to enforceability unless the provision is procedurally ***and*** substantively

14

unconscionable. *Zabelny*, 2014 U.S. Dist. LEXIS 2626 at *25. Here, the third *Ainsworth* factor

15

is also met, and arbitration should be compelled, because the Agreements are clearly valid and

16

enforceable. *Ainsworth*, 2011 WL 1496677 at *1 (citing *Lifescan, Inc.*, 363 F.3d at 1012).

17

       First, as the Seventh Circuit noted, the argument that arbitration clauses contained in

18

standard-form contracts are unconscionable has been rejected "as often as it has been raised."

19

*Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004). *See also Concepcion*, -- U.S. --, 131

20

S.Ct. at 1745 (FAA preempts California judicial rule that arbitration agreements with class action

21

waivers are unconscionable under state law); *Marmet Health Care Center*, -- U.S. at --, 132 S.Ct.

22

at 1204 (2012) (FAA preempts West Virginia's judicial rule that arbitration agreements in nursing

23

home admission agreements are unenforceable under state law).

24

25

26

27

28

---

[6]     As described above, the fact that Plaintiffs' claims are primarily based on state law is of no consequence. Indeed, "[f]ederal law preempts state law on issues of abitrability." *Three Valleys Municipal Water Dist.*, 925 F.2d at 1139. In *Circuit City*, for example, the plaintiff sought to avoid a contractual arbitration clause by arguing that "a state statute ought not be denied state judicial enforcement while awaiting the outcome of arbitration." 532 U.S. at 124-125 (citations omitted). The Supreme Court rejected the argument and stated it was foreclosed by the Court's previous precedent, including *Southland, supra. Id.* at 124. Hence, Nevada wage claims raised by Plaintiffs are subject to arbitration just like the California Fair Employment and Housing Act claims raised in *Circuit City. Id.* at 110.

1    Second, Plaintiffs executed the agreements prior to undertaking any labor. *See* Exhibits 1-

2   3. Third, the arbitration clause is reciprocal and prominently displayed in bold, all-caps type-

3   face. *Id.* at ¶ 21. Fourth, the signature page demonstrates the parties acknowledged that they

4   received a copy of and read the terms, agreed "to be bound by all of its terms," and had the

5   opportunity to ask questions about the terms and have the Agreement reviewed by a personal

6   representative, "including attorneys[.]" *Id.* at p. 5 of 6.[7]

7    Further, the Agreement is not one of adhesion. In fact, beyond Plaintiffs' option to simply

8   not perform at Bistro, the Agreement provides: "**4. Non-Exclusivity**. Entertainer's obligations

9   under this [Agreement] are non-exclusive. She is free to perform at any other businesses or

10  venues." **Exhibits 1-3**, ¶ 4. Moreover, the class waiver in Paragraph 21(B) is permissible under

11  the FAA and cannot be a barrier to compelling the parties to arbitrate. *Richards*, 734 F.3d at 873;

12  *Italian Colors*, -- U.S. at --, 133 S.Ct. at 2308-09; *Concepcion*, -- U.S. at --, 131 S.Ct. at 1745;

13  *Zabelny*, 2014 U.S. Dist. LEXIS 2626 at *25.

14   In sum, binding U.S. Supreme Court and Ninth Circuit decisions, in addition to the

15  thorough decision in *Zabelny*, which applied this binding precedent, establish that mandatory

16  arbitration clauses found in labor agreements, coupled with class waiver clauses, are valid and

17  enforceable under the FAA. The FAA, in turn, preempts potentially conflicting law. In the

18  present case, Plaintiffs' executed the Agreements, the claims raised in the First Amended

19  Complaint fall within the arbitration clause's scope, and the arbitration clause is otherwise valid

20  and enforceable. The Court should, therefore, compel Plaintiffs to arbitrate this dispute.

21  **B.    The First Amended Complaint Should Be Dismissed**

22   Because the parties agreed to submit their disputes to arbitration pursuant to the FAA, the

23  Court should dismiss this action under Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1) a

24  responding party may file a motion to dismiss the adverse party's claims based on the court's lack

25  of subject matter jurisdiction. Numerous courts have held that, "[i]f a district court determines

26  ───────────────

27  [7]    The Agreements also contain a severance clause that states, in part, "If any provision of this [Agreement] is declared to be illegal or unenforceable, this [Agreement] shall, to the extent possible, be interpreted as if that provision was not part of this [Agreement]." *Id.* at ¶ 19. In addition, the Agreement provides that "All portions of this Paragraph 21 survive expiration, termination, and/or cancellation of this [Agreement]."

28

JACKSON LEWIS P.C.
LAS VEGAS

that parties have agreed to arbitrate a dispute, the district court … no longer has the authority to resolve arbitrable claims." *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F. 3d 727, 732 (7th Cir. 2005) (citing 9 U.S.C. § 3). Agreements to arbitrate have, therefore, been held to be jurisdictional. *See Jacobsen v. J.K. Pontiac GMC Truck, Inc.*, 2001 WL 1568817, at *1 (N.D. Ill. Dec. 10, 2001); *Harris v. United States,* 841 F.2d 1097, 1099 (Fed. Cir. 1988) (upholding district court dismissal under Rule 12(b)(1)); *Atkins v. Louisville & Nashville R.R. Co.*, 819 F.2d 644, 647 (6th Cir. 1987) (treating dismissal as under Rule 12(b)(1)).

Dismissal is the appropriate remedy when all of a plaintiff's claims are subject to arbitration. *Webb v. Harris*, 378 F.Supp.2d 608, 613 (M.D.N.C. 2005). On prior occasions where the Court has found that a plaintiff failed to meet her burden of demonstrating that an arbitration clause is unenforceable, the Court has dismissed the suit under Rule 12(b). *L&M Creations, Inc. v. CRC Info. Sys.*, No. 2:10-CV-00685-GMN, 2011 WL 1103636, at *9 (D. Nev. Mar. 23, 2011); *Telepet USA, Inc. v. Qualcomm, Inc.*, No. 2:14-CV-00568-GMN, 2014 WL 6826833, at *3 (D. Nev. Dec. 3, 2014); *see Zabelny*, 2014 U.S. Dist. LEXIS 2626 at *45.

All of Plaintiffs' claims are subject to binding arbitration. Defendants, therefore, respectfully request that this case be dismissed, with instructions that Plaintiffs pursue their claims in arbitration. Should the Court deem dismissal inappropriate, Defendants alternatively request that this action be stayed pending arbitration.

**C.     Defendants Should Be Awarded Fees And Costs For This Motion**

Defendants respectfully request that the Court award them fees and costs associated with compelling arbitration because the parties agreed to this term in the Agreement. Exhibits 1-3, ¶ 21(D). A court may award attorney fees that authorized by statute, rule, or contract between the parties. *U.S. Design & Constr. v. I.B.E.W. Local 357,* 118 Nev. 458, 462, 50 P.3d 170, 173 (2002). The Nevada Supreme Court explained that "when parties enter into a contract and litigation later ensues over that contract, attorney's fees may be recovered under a prevailing-party attorney fee provision therein[.]" *Mackintosh v. California Fed. Savings and Loan Ass'n*, 113 Nev. 393, 406, 935 P.2d 1154, 1162 (1997) (citation omitted). Moreover, "awarding attorney

1  fees to a party who prevails on a motion to compel arbitration under the FAA would further
2  Congress's intention to 'rigorously enforce' arbitration agreements." *Olle v. 5401 W. Ave.*
3  *Residential, LLC*, 569 F. Supp. 2d 141, 147 (D. D.C. 2008).

4  Here, the Agreement's relevant attorney fee provision states:

5  IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO
   INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION
6  REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO
   SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE
7  ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE
   ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.

8  Exhibits 1-3, ¶ 21(C).  Plaintiffs failed pursue their claims in arbitration, as agreed, which then
9  required Defendants to file the present motion to compel them to arbitration.

10  Despite Defendants' best efforts to convince Plaintiffs to submit this dispute to arbitration,
11  Plaintiffs responded with complete silence.  *See* Exhibit 4.  As the law and argument outlined
12  above demonstrates, the Agreement's arbitration clause is valid and enforceable.  Plaintiffs,
13  therefore, being fully aware of the arbitration clause and fees and costs provision, have
14  unjustifiably refused to comply with the Agreement's terms.

15  A similar situation was presented in *Lamkin v. Morinda Properties Weight Parcel*, 440
16  Fed. Appx. 604 (10th Cir. 2011).  The arbitration clause in that contract, similar to Paragraph
17  26(C) of the Agreement, provided: "in the event of . . . litigation to enforce the arbitration
18  provisions of this Contract, the prevailing party shall be awarded its costs and reasonable attorney
19  fees." *Id.*  As a consequence, upon finding the dispute was subject to arbitration, the Tenth
20  Circuit remanded the case with instructions for the district court to award costs and attorney fees
21  to the defendant for successfully compelling arbitration in accordance with the contract. *Id.*  The
22  same result should follow here.

23  All of Plaintiff's claims are subject to the arbitration requirements in the Agreement
24  because each claim arises out of Plaintiff performing at the club.  "Because the parties
25  contractually agreed to an award of costs and attorney's fees if either party successfully compels
26  arbitration," Defendant is entitled under the contract to such relief upon successfully compelling
27  arbitration. *Perez v. Qwest Corp.*, 883 F. Supp. 2d 1095, 1097, 1127 (D. N.M. 2012) (employer

28

awarded fees and costs under the terms of an arbitration clause for compelling employee's Title VII action to arbitration); *see also Emilio v. Sprint Spectrum L.P.*, 08 CIV. 7147 (BSJ), 2008 WL 5329955, at \*1, \*1 n. 2 (S.D. N.Y. Dec. 15, 2008) (customer awarded fees under terms of arbitration clause for compelling arbitration).

As previously stated, "Courts must '*rigorously enforce' arbitration agreements according to their terms*, . . . including terms that 'specify with whom [the parties] choose to arbitrate their disputes,' . . . and '*the rules under which the arbitration will be conducted*.'" *Italian Colors*, 133 S.Ct. at 2309 (emphasis added) (citation omitted). The costs provision of Paragraph 26(C) is no different than the costs permitted under the Federal Rules of Civil Procedure or the United States Code. *See Hinterberger v. Catholic Health Sys., Inc.*, 284 F.R.D. 94, 105-06 (W.D. N.Y. 2012) (Rule 37 sanctions imposed upon Fair Labor Standard Act ("FLSA", the federal minimum wage act) plaintiffs).

Plaintiffs unjustifiably refused to submit this dispute to arbitration and refused to respond to Defendants' three requests to do so. Because Plaintiffs failed to follow the mandatory dispute resolution provisions of the Agreement, they should be required to pay the needless fees and costs Defendants incurred in litigating a motion to compel arbitration.

## IV.   <u>CONCLUSION</u>

Based on the forgoing argument, Defendants respectfully request that the Court enter an order dismissing this action and compelling the parties to submit to arbitration according to the Agreement's terms. In the alternative, Defendants request that these proceedings be stayed pending arbitration. Finally, Defendants request that the Court award fees and costs pursuant to the Agreement because Plaintiffs refused to submit to arbitration.

Dated: March 18, 2015.

JACKSON LEWIS P.C.


_____/s/ Elayna J. Youchah_____
Elayna J. Youchah, Bar # 5837
Steven C. Anderson, Bar # 11901
3800 Howard Hughes Parkway, Ste. 600
Las Vegas, Nevada  89169
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 18th day of March, 2015, I caused to be served via ECF filing a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS, OR, ALTERNATIVELY, STAY THE ACTION PENDING ARBITRATION** to the following:

Ryan M. Anderson
Jacqueline Bretell
Morris Anderson Law
716 S. Jones Blvd.
Las Vegas, Nevada 89107

*Attorneys for Plaintiffs*

　　　　　　　　　　　　　　　　_____/s/ Emily Santiago_____
　　　　　　　　　　　　　　　　Employee of Jackson Lewis P.C.

# EXHIBIT A

# EXHIBIT A

## DECLARATION OF STEVEN C. ANDERSON

I, Steven C. Anderson, make this declaration in support of Defendants' Motion to Compel Arbitration and Dismiss or, Alternatively, Stay the Action Pending Arbitration (the "Motion") in Case No. 2:15-cv-0452-GMN-NJK.

1.      I am an attorney at Jackson Lewis P.C., counsel of record for Defendants in this matter captioned as *Krystal Campbell et al. v. Dean Martin Dr – Las Vegas, LLC, et al.* pending in the United States District Court for the District of Nevada.  I have personal knowledge of the facts stated below and would be competent to testify to all facts stated below if called as a witness.

2.      Attached to this Declaration as Exhibit 1 is a true and correct copy of Plaintiff Ashleigh Park's Dancer Performance Lease agreement.

3.      Attached to this Declaration as Exhibit 2 is a true and correct copy of Plaintiff Krystal Campbell's Dancer Performance Lease agreement.

4.      Attached to this Declaration as Exhibit 3 is a true and correct copy of Plaintiff Shana Ragin's Dancer Performance Lease agreement.

5.      Those portions of the signature pages for Exhibits 1-3 that contain Plaintiffs' personal information have been redacted to protect their privacy.

6.      Attached to this Declaration as Exhibit 4 is the Declaration of Kelly Jones, the General Manager of Defendant Las Vegas Bistro, LLC, dba *Larry Flynt's Hustler Club*.  Mr. Jones' Declaration further authenticates Exhibits 1-3.

7.      Attached to this Declaration as Exhibit 5 is correspondence that was emailed to Plaintiffs' counsel on March 17, 2015, and which details Defendants' attempts to have Plaintiffs' honor the arbitration clauses contained in Exhibits 1-3.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 18th day of March, 2015.

/s/ Steven C. Anderson
Steven C. Anderson

1

# EXHIBIT 1

# EXHIBIT 1

### DANCER PERFORMANCE LEASE

**NOTICE: THIS IS A LEGAL CONTRACT.  DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS.  IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER.  WE SUGGEST THAT BEFORE SIGNING, YOU HAVE THIS CONTRACT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

This Dancer Performance Lease (**"Lease"**) is entered into by the **"Club"** and **"Entertainer"** (the **"parties"**) to permit **Entertainer** to use certain portions of the **"Premises."**  The **"Club,"** **"Entertainer,"** and **"Premises"** are identified on the last page of this **Lease**.

**PURPOSE OF LEASE:**

The **Club** operates an entertainment facility on the **Premises**. **Entertainer**, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services, desires to obtain the right to use certain areas of the **Premises** for her professional activities.

**TERMS OF LEASE:**

**Club** and **Entertainer** agree as follows:

**1. Leasing of Premises/Term.**  The **Club** grants to **Entertainer** the right, during normal business hours, to jointly, along with other entertainers, use the stage areas and certain other portions of the **Premises** designated by the **Club**. This **Lease** begins today and ends on the earlier of: **A)** January 31, 2015; or **B)** a termination date as provided for in paragraph 18.

**2. Club's Additional Obligations.**  The **Club** shall:

   **A.**  Provide, at its own expense, music for use on the **Premises**, lighting, and dressing room facilities, and pay all copyright fees due relative to that music; and

   **B.**  Reasonably advertise the business for the benefit of both **Entertainer** and the **Club**.  This does not, however, prohibit Entertainer from advertising her services in any manner she so desires.

**3. Subleasing.**  This **Lease** is for **Entertainer's** personal skills and artistic talent. Consequently, **Entertainer** has no right to sublease or to assign any of her rights or obligations in this **Lease** to any other person without the written consent of the **Club**. However, **Entertainer** has the right to substitute the services of any licensed (if legally required) entertainer who has also entered into a Dancer Performance Lease with the **Club**.

**4. Non-Exclusivity.**  **Entertainer's** obligations under this **Lease** are non-exclusive.  She is free to perform at any other businesses or venues.

**5. Use of Premises.**  **Entertainer** agrees to:

   **A.**  Perform clothed, as well as semi-nude ("topless") or nude (whichever is permitted by law) dance entertainment and to perform in stage rotations;

   **B.**  Obtain, keep in effect, and have in her possession at all times while she is on the **Premises**, any and all required licenses and/or permits;

   **C.**  Not violate any laws (violations of the law are beyond the scope of authority under, and constitute a breach of, this **Lease**);

   **D.**  Maintain accurate daily records of all income, including tips, earned while performing on the **Premises**, in accordance with all taxation laws;

   **E.**  Become knowledgeable of all laws that apply to **Entertainer's** conduct while on the **Premises**; and

   **F.**  Pay for any damages she causes to the **Premises** and/or to any of the **Club's** personal property.

**6. Compliance with Rules.**  The **Club** may impose rules upon the use of the **Premises** by **Entertainer** as the **Club** deems necessary in order to ensure that: A) no damage to the **Club's** property occurs; B) the **Premises** are used in a safe fashion for the benefit of all entertainers, patrons, and others; and C) no violations of the law occur.  **Entertainer** agrees to comply with all such rules, as well as with all rules established by a majority vote of **Entertainers** under lease with the **Club**.

**7. Nature of Performance and Costuming.**  The **Club** has no right to direct or control the nature, content, character, manner or means of **Entertainer's** entertainment services, her performances, or the costumes/wearing apparel she selects. **Entertainer** shall supply all of her own costumes and wearing apparel, which must comply with all applicable laws and shall be in accordance with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities.

**8. Intellectual Property.**  **Entertainer** retains all intellectual property rights to her performances, stage name and likeness, unless assigned by her in writing.

**9. Nature of Business.**  **Entertainer** understands: A) That the nature of the **Club's** business is adult entertainment; and B) that she may be subjected to either full or partial nudity (primarily female), explicit language, advances by customers, depictions or portrayals of a sexual nature, and to similar types

of behavior.  **Entertainer** represents that she is not and will not be offended by, and she assumes any and all risks associated with, being subjected to such matters.

**10.** __Privacy__.  Privacy and personal safety are important concerns to **Entertainer**.  Accordingly, the **Club** shall not knowingly disclose to any persons who are not associated with the **Club,** **Entertainer's** legal name, address, or telephone number, except upon written authorization of the **Entertainer** or as required by law.

**11.** Entertainment Fees.  In consultation with entertainers who lease space on the **Premises**, the **Club** shall establish fixed fees as the price for certain personal performances ("**Entertainment Fees**").  **Entertainer** agrees not to charge a customer less than the fixed price for any such performance unless the **Entertainer** notifies the **Club** in writing of any charges to her customers of a lower amount.  Nothing in this Lease, however, limits **Entertainer** from receiving tips over-and-above the established price for such performances (**Entertainer** is not required to share her tips with anyone else).  THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR PURCHASING A PERSONAL ENTERTAINMENT PERFORMANCE.

**12.** Business Relationship of Parties.

   **A.**  The parties acknowledge that the business relationship created between them is that of the joint and non-exclusive leasing of certain parts of the **Premises** (meaning that other entertainers are also leasing parts of the **Premises** at the same time). THE PARTIES SPECIFICALLY DISAVOW ANY      EMPLOYMENT RELATIONSHIP BETWEEN THEM, and this      Lease shall not be interpreted as creating an   employer/employee relationship or any contract for employment.  ENTERTAINER UNDERSTANDS THAT THE CLUB WILL NOT PROVIDE TO HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY,  EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.

   **B.**  The **Club** and **Entertainer** acknowledge that if the relationship between them was that of employer and employee, the **Club** would be required to collect, and would retain, all **Entertainment Fees** paid by customers to **Entertainer** ── ENTERTAINER SPECIFICALLY ACKNOWLEDGING THAT IN AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL **ENTERTAINMENT FEES** WOULD BE,   BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE **CLUB** AND NOT THE PROPERTY OF **ENTERTAINER**.  **ENTERTAINER'S** RIGHT TO OBTAIN AND KEEP **ENTERTAINMENT FEES** IS SPECIFICALLY  CONTINGENT UPON THE

BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LANDLORD AND TENANT.

Under an employment relationship, **Entertainer** would be paid on an hourly basis at a rate equal to the applicable minimum wage for non-insurance employees.  **Entertainer** would further be entitled to all retain tips ── *but not* Entertainment Fees ── that she may collect, although she would be required to pay 25% of her tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees.

The parties additionally acknowledge that were the relationship between them to be that of employer/employee, **Entertainer's** employment would be "at will" (she could be fired at any time without cause and without prior warning), and the **Club** could control, among other things, **Entertainer's**: Work schedule and hours of work; job responsibilities; physical appearance (such as make-up, hairstyle, etc.); costumes/wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at other locations. ENTERTAINER REPRESENTS THAT SHE DESIRES TO BE ABLE TO MAKE ALL OF THESE CHOICES HERSELF, WITHOUT THE CONTROL OF THE CLUB, AND THE PARTIES AGREE THAT ALL SUCH DECISIONS ARE EXCLUSIVELY RESERVED TO HER CONTROL.

ENTERTAINER FURTHER REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB UNDER THE TERMS OUTLINED ABOVE, BUT, RATHER, DESIRES TO PERFORM AS A TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS LEASE.

**C.**  If any court, tribunal, arbitrator, or governmental agency determines, or if **Entertainer** at any time claims, that the relationship between the parties is one of employment and that **Entertainer** is then entitled to the payment of wages from the **Club**, all of the following shall apply:

   **i.**  In order to comply with applicable tax laws and to assure that the **Club** is not unjustly harmed and that **Entertainer** is not unjustly enriched by the parties having financially operated pursuant to this **Lease**, the parties agree that **Entertainer** shall surrender, reimburse and pay to the **Club**, all **Entertainment Fees** received by her at any time she performed on the **Premises** - all of which would otherwise have been collected and kept by the **Club** had they not been retained by **Entertainer** under the terms of this **Lease** - and shall immediately provide a full accounting to the **Club** of all tip income which she received

during that time;

    ii.    **Entertainer** shall immediately remit to the **Club** 25% of all tips that she earned while performing at the **Club**, which shall be distributed to non-dancer regularly tipped employees;

    iii.    Any **Entertainment Fees** that **Entertainer** does not return to the **Club** shall be deemed service charges paid by the customer and shall be accounted for by the **Club** as such. The **Club** shall then be entitled to a credit against any wages due in the amount of the **Entertainment Fees** retained by **Entertainer,** and such fees shall therefore constitute wages paid from the **Club** to **Entertainer**. In such circumstances, the **Club** shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income; and

    iv.    The relationship of the parties shall immediately convert to an employment arrangement under the terms in subparagraph 12B.

**D.**    If at any time **Entertainer** believes that - - irrespective of the terms of this **Lease** - - she is being treated as an employee by the **Club** or that her relationship with the **Club** is truly that of an employee, **Entertainer** shall immediately, **but in no event later than three business days thereafter:** i) provide notice to the **Club** in writing of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(B) and applicable law; and ii) begin reporting all of her tip income to the **Club** on a daily basis (such tip reporting being legally required of all regularly tipped employees).

**13.**  <u>Taxes</u>. **Entertainer** is exclusively responsible for, and shall pay, all applicable taxes and contributions imposed upon any income earned by **Entertainer** while performing on the **Premises.**

**14.**  <u>Scheduling of Performance Dates</u>. **Entertainer** shall determine the days when she desires to utilize the **Premises** (each such day being one "Show Date"). **Entertainer** may, but need not, select, at least one week in advance, the days she desires to utilize the **Premises** during the following week. **Entertainer** may be permitted to lease space on the **Premises** on days and during weeks when she has not scheduled herself to perform, subject to space availability.

**Entertainer** contracts to perform during the entertainment sessions stated in the "**Specifications**" section of this **Lease**.

If **Entertainer** misses an entire scheduled Show Date, she agrees to pay to the **Club** no later than by the end of her next

Show Date, a lost rent charge as stated in the "**SPECIFICATIONS**" section. Lost rent charges are established in view of the fact that it would be difficult to determine the exact lost rent and damages incurred as a result of such breaches of this **Lease**.

**15.**  <u>Rent</u>. **Entertainer** shall pay rent ("**Rent**") to the **Club** in amounts stated in the "**SPECIFICATIONS**" section. **Rent** shall be paid immediately upon completion of the Show Date for which it is due.

**16.**  <u>Material Breach by Club</u>. The **Club** materially breaches this **Lease** by failing to provide to **Entertainer** the leased portions of the **Premises** on any day she schedules, or by willfully violating any law governing the operation of the **Club**. _ The **Club** shall not be liable for acts of G-d or other causes beyond its reasonable control.

**17.**  <u>Material Breach by Entertainer</u>. **Entertainer** materially breaches this **Lease** by failing to maintain any and all required licenses and/or permits; willfully violating any law while on the **Premises**; failing to appear for a scheduled Show Date on two or more occasions in any one calendar month; failing to pay any **Rent** when due; failing to timely pay any assessed lost rent charges; or claiming the business relationship with the **Club** as being other than that of a landlord and tenant.

**18.**  <u>Termination/Breach</u>. Either party may terminate this **Lease**, without cause, upon thirty (30) days' notice. Upon material breach, the non-breaching party may terminate this **Lease** upon twenty-four (24) hours' notice or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow **Entertainer** to perform on the **Premises** without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws.

**19.**  <u>Severability</u>. If any provision of this **Lease** is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease**; it being the intent of the parties that such part be, to the extent possible, severable from this **Lease** as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between **Entertainer** and the **Club** is something other than that of landlord and tenant, the relationship between **Entertainer** _ and the **Club** shall be controlled by the provisions of subparagraphs 12B and 12C.

**20.**  <u>Governing Law</u>. This **Lease** shall be interpreted pursuant to the laws of the State of Nevada.

**21.**  <u>MANDATORY ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS.</u>

    **A.**    **EXCEPT FOR ANY ADMINISTRATIVE PROCEEDINGS THAT ARE NOT LEGALLY BARRED BY THIS PARAGRAPH, ANY**

CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "FAA"). SUCH ARBITRATION SHALL OCCUR IN THE STATE OF NEVADA AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21, ANY RELIEF AVAILABLE IN A COURT. THE ARBITRATOR SHALL NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIM, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDINGS. IN THE EVENT AN ACTION IS BROUGHT IN ARBITRATION ON BEHALF OF MULTIPLE INDIVIDUALS, THE ARBITRATOR SHALL HAVE ONLY THE AUTHORITY TO DIVIDE THE ACTION INTO INDIVIDUAL PROCEEDINGS; EACH THEN TO BE HEARD BY AN INDIVIDUAL ARBITRATOR. EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY. THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA. THE COSTS OF ARBITRATION SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS THE ARBITRATOR CONCLUDES THAT A DIFFERENT ALLOCATION IS REQUIRED BY LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B. ENTERTAINER AGREES THAT ALL CLAIMS BY HER AGAINST THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) SHALL BE BROUGHT AND MAINTAINED BY HER INDIVIDUALLY; THAT SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THOSE OF ANY OTHER INDIVIDUAL; THAT SHE WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT SHE MAY HAVE; AND THAT SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH IT. IF AT ANY TIME ENTERTAINER IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING BARRED BY THESE PROVISIONS, SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY.

C. IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.

D. ANY RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT NOT PRECLUDED BY LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS, INCLUDING REASONABLE ATTORNEY FEES, TO THE PREVAILING PARTY.

E. THE ARBITRATION PROVISIONS OF THIS PARAGRAPH 21 SUPERSEDE ANY PRIOR ARBITRATION AGREEMENT(S) ENTERED INTO BETWEEN THE CLUB AND THE ENTERTAINER.

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE EXPIRATION, TERMINATION, AND/OR CANCELLATION OF THIS LEASE.

This **Lease** is immediately terminated if **Entertainer** is not of legal age.  **Entertainer** specifically represents that she is of lawful age or older, that she has provided appropriate identification verifying her age, and that such identification is valid and authentic.

**BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT SHE HAS RECEIVED A COPY OF, AND HAS FULLY READ, THIS LEASE; THAT SHE UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF ITS TERMS; AND THAT SHE HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT AND HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.**

**"CLUB"**

Las Vegas Bistro, LLC

**By:** _____
[signature]

RALPH JAMES
[printed name]

**Its:** GM
[position]

**"PREMISES"** 3131 Ponderosa Way
[Club address]

Las Vegas
[City, state, zip code]

**DATE:** 11/6/2014  8:21:55PM

**"ENTERTAINER"**

_____
[signature]

ASHLEIGH PARK
[printed name]

**REDACTED**
[stage name]

**REDACTED**
[address]

LOUISVILLE, TN, 37777
[City, state, zip code]

**REDACTED**
[Entertainer's license/permit number — if applicable]

**REDACTED**
[Entertainer's I.D. number]

## SPECIFICATIONS

Base rent:

$ _____ per **Day**           Show Date; $ _____ per **Night** Show Date

Additional rent (cross out if not applicable):

For each table dance:     $_____        For each couch dance:    $_____
For each specialty dance:     $_____

VIP room rent charge:    $_____        Scrip use administration charge: _____%

**Entertainer** contracts to perform during _____ (day or evening) entertainment sessions.

Lost rent charge:    Day Show Date missed: $_____ ;   Night Show Date missed: $_____

ADDITIONAL PROVISIONS:

_____
_____
_____
_____

# EXHIBIT 2

# EXHIBIT 2

# DANCER PERFORMANCE LEASE

**NOTICE: THIS IS A LEGAL CONTRACT.  DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS.  IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER.  WE SUGGEST THAT BEFORE SIGNING, YOU HAVE THIS CONTRACT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

This Dancer Performance Lease (**"Lease"**) is entered into by the **"Club"** and **"Entertainer"** (the **"parties"**) to permit **Entertainer** to use certain portions of the **"Premises."**  The **"Club,"** **"Entertainer,"** and **"Premises"** are identified on the last page of this **Lease**.

## PURPOSE OF LEASE:

The **Club** operates an entertainment facility on the **Premises**. **Entertainer**, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services, desires to obtain the right to use certain areas of the **Premises** for her professional activities.

## TERMS OF LEASE:

**Club** and **Entertainer** agree as follows:

**1. Leasing of Premises/Term.**  The **Club** grants to **Entertainer** the right, during normal business hours, to jointly, along with other entertainers, use the stage areas and certain other portions of the **Premises** designated by the **Club**. This **Lease** begins today and ends on the earlier of: **A)** January 31, 2015; or **B)** a termination date as provided for in paragraph 18.

**2. Club's Additional Obligations.**  The **Club** shall:

    **A.** Provide, at its own expense, music for use on the **Premises**, lighting, and dressing room facilities, and pay all copyright fees due relative to that music; and

    **B.** Reasonably advertise the business for the benefit of both **Entertainer** and the **Club**.  This does not, however, prohibit Entertainer from advertising her services in any manner she so desires.

**3. Subleasing.**  This **Lease** is for **Entertainer's** personal skills and artistic talent.  Consequently, **Entertainer** has no right to sublease or to assign any of her rights or obligations in this **Lease** to any other person without the written consent of the **Club**. However, **Entertainer** has the right to substitute the services of any licensed (if legally required) entertainer who has also entered into a Dancer Performance Lease with the **Club**.

**4. Non-Exclusivity.**  **Entertainer's** obligations under this **Lease** are non-exclusive.  She is free to perform at any other businesses or venues.

**5. Use of Premises.**  **Entertainer** agrees to:

    **A.** Perform clothed, as well as semi-nude ("topless") or nude (whichever is permitted by law) dance entertainment and to perform in stage rotations;

    **B.** Obtain, keep in effect, and have in her possession at all times while she is on the **Premises**, any and all required licenses and/or permits;

    **C.** Not violate any laws (violations of the law are beyond the scope of authority under, and constitute a breach of, this **Lease**);

    **D.** Maintain accurate daily records of all income, including tips, earned while performing on the **Premises**, in accordance with all taxation laws;

    **E.** Become knowledgeable of all laws that apply to **Entertainer's** conduct while on the **Premises**; and

    **F.** Pay for any damages she causes to the **Premises** and/or to any of the **Club's** personal property.

**6. Compliance with Rules.**  The **Club** may impose rules upon the use of the **Premises** by **Entertainer** as the **Club** deems necessary in order to ensure that: A) no damage to the **Club's** property occurs; B) the **Premises** are used in a safe fashion for the benefit of all entertainers, patrons, and others; and C) no violations of the law occur.  **Entertainer** agrees to comply with all such rules, as well as with all rules established by a majority vote of **Entertainers** under lease with the **Club**.

**7. Nature of Performance and Costuming.**  The **Club** has no right to direct or control the nature, content, character, manner or means of **Entertainer's** entertainment services, her performances, or the costumes/wearing apparel she selects. **Entertainer** shall supply all of her own costumes and wearing apparel, which must comply with all applicable laws and shall be in accordance with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities.

**8. Intellectual Property.**  **Entertainer** retains all intellectual property rights to her performances, stage name and likeness, unless assigned by her in writing.

**9. Nature of Business.**  **Entertainer** understands: A) That the nature of the **Club's** business is adult entertainment; and B) that she may be subjected to either full or partial nudity (primarily female), explicit language, advances by customers, depictions or portrayals of a sexual nature, and to similar types

of behavior. **Entertainer** represents that she is not and will not be offended by, and she assumes any and all risks associated with, being subjected to such matters.

**10.** <u>Privacy.</u>  Privacy and personal safety are important concerns to **Entertainer**. Accordingly, the **Club** shall not knowingly disclose to any persons who are not associated with the **Club**, **Entertainer's** legal name, address, or telephone number, except upon written authorization of the **Entertainer** or as required by law.

**11.** <u>**Entertainment Fees.**</u>  In consultation with entertainers who lease space on the **Premises**, the **Club** shall establish fixed fees as the price for certain personal performances ("**Entertainment Fees**"). **Entertainer** agrees not to charge a customer less than the fixed price for any such performance unless the **Entertainer** notifies the **Club** in writing of any charges to her customers of a lower amount. Nothing in this Lease, however, limits **Entertainer** from receiving tips over-and-above the established price for such performances (**Entertainer** is not required to share her tips with anyone else). THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR PURCHASING A PERSONAL ENTERTAINMENT PERFORMANCE.

**12.** <u>**Business Relationship of Parties.**</u>

    **A.** The parties acknowledge that the business relationship created between them is that of the joint and non-exclusive leasing of certain parts of the **Premises** (meaning that other entertainers are also leasing parts of the **Premises** at the same time). THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and this **Lease** shall not be interpreted as creating an employer/employee relationship or any contract for employment. ENTERTAINER UNDERSTANDS THAT THE **CLUB** WILL NOT PROVIDE TO HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.

    **B.**  The **Club** and **Entertainer** acknowledge that if the relationship between them was that of employer and employee, the **Club** would be required to collect, and would retain, all **Entertainment Fees** paid by customers to **Entertainer** — ENTERTAINER SPECIFICALLY ACKNOWLEDGING THAT IN AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL **ENTERTAINMENT FEES** WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE **CLUB** AND NOT THE PROPERTY OF **ENTERTAINER**. **ENTERTAINER'S** RIGHT TO OBTAIN AND KEEP **ENTERTAINMENT FEES** IS SPECIFICALLY CONTINGENT UPON THE

BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LANDLORD AND TENANT.

Under an employment relationship, **Entertainer** would be paid on an hourly basis at a rate equal to the applicable minimum wage for non-insurance employees. **Entertainer** would further be entitled to all retain tips — ***but not*** Entertainment Fees — that she may collect, although she would be required to pay 25% of her tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees.

The parties additionally acknowledge that were the relationship between them to be that of employer/employee, **Entertainer's** employment would be "at will" (she could be fired at any time without cause and without prior warning), and the **Club** could control, among other things, **Entertainer's**: Work schedule and hours of work; job responsibilities; physical appearance (such as make-up, hairstyle, etc.); costumes/wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at other locations. ENTERTAINER REPRESENTS THAT SHE DESIRES TO BE ABLE TO MAKE ALL OF THESE CHOICES HERSELF, WITHOUT THE CONTROL OF THE **CLUB**, AND THE PARTIES AGREE THAT ALL SUCH DECISIONS ARE EXCLUSIVELY RESERVED TO HER CONTROL.

ENTERTAINER FURTHER REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE **CLUB** UNDER THE TERMS OUTLINED ABOVE, BUT, RATHER, DESIRES TO PERFORM AS A TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS **LEASE.**

    **C.**    If any court, tribunal, arbitrator, or governmental agency determines, or if **Entertainer** at any time claims, that the relationship between the parties is one of employment and that **Entertainer** is then entitled to the payment of wages from the **Club**, all of the following shall apply:

    **i.**    In order to comply with applicable tax laws and to assure that the **Club** is not unjustly harmed and that **Entertainer** is not unjustly enriched by the parties having financially operated pursuant to this **Lease**, the parties agree that **Entertainer** shall surrender, reimburse and pay to the **Club**, all Entertainment Fees received by her at any time she performed on the **Premises** - all of which would otherwise have been collected and kept by the **Club** had they not been retained by **Entertainer** under the terms of this **Lease** - and shall immediately provide a full accounting to the **Club** of all tip income which she received

during that time;

    ii.  **Entertainer** shall immediately remit to the **Club** 25% of all tips that she earned while performing at the **Club**, which shall be distributed to non-dancer regularly tipped employees;

    iii.  Any **Entertainment Fees** that **Entertainer** does not return to the **Club** shall be deemed service charges paid by the customer and shall be accounted for by the **Club** as such. The **Club** shall then be entitled to a credit against any wages due in the amount of the **Entertainment Fees** retained by **Entertainer,** and such fees shall therefore constitute wages paid from the **Club** to **Entertainer.** In such circumstances, the **Club** shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income; and

    iv.  The relationship of the parties shall immediately convert to an employment arrangement under the terms in subparagraph 12B.

D.  If at any time **Entertainer** believes that - - irrespective of the terms of this **Lease** - - she is being treated as an employee by the **Club** or that her relationship with the **Club** is truly that of an employee, **Entertainer** shall immediately, **but in no event later than three business days thereafter:** i) provide notice to the **Club** in writing of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(B) and applicable law; and ii) begin reporting all of her tip income to the **Club** on a daily basis (such tip reporting being legally required of all regularly tipped employees).

**13.** Taxes. **Entertainer** is exclusively responsible for, and shall pay, all applicable taxes and contributions imposed upon any income earned by **Entertainer** while performing on the **Premises.**

**14.** Scheduling of Performance Dates. **Entertainer** shall determine the days when she desires to utilize the **Premises** (each such day being one "Show Date"). **Entertainer** may, but need not, select, at least one week in advance, the days she desires to utilize the **Premises** during the following week. **Entertainer** may be permitted to lease space on the **Premises** on days and during weeks when she has not scheduled herself to perform, subject to space availability.

**Entertainer** contracts to perform during the entertainment sessions stated in the "**Specifications**" section of this **Lease.**

If **Entertainer** misses an entire scheduled Show Date, she agrees to pay to the **Club** no later than by the end of her next

Show Date, a lost rent charge as stated in the "SPECIFICATIONS" section. Lost rent charges are established in view of the fact that it would be difficult to determine the exact lost rent and damages incurred as a result of such breaches of this **Lease.**

**15.** Rent. **Entertainer** shall pay rent ("**Rent**") to the **Club** in amounts stated in the "**SPECIFICATIONS**" section. **Rent** shall be paid immediately upon completion of the Show Date for which it is due.

**16.** Material Breach by Club. The **Club** materially breaches this **Lease** by failing to provide to **Entertainer** the leased portions of the **Premises** on any day she schedules, or by willfully violating any law governing the operation of the **Club.** _ The **Club** shall not be liable for acts of G-d or other causes beyond its reasonable control.

**17.** Material Breach by Entertainer. **Entertainer** materially breaches this **Lease** by failing to maintain any and all required licenses and/or permits; willfully violating any law while on the **Premises**; failing to appear for a scheduled Show Date on two or more occasions in any one calendar month; failing to pay any **Rent** when due; failing to timely pay any assessed lost rent charges; or claiming the business relationship with the **Club** as being other than that of a landlord and tenant.

**18.** Termination/Breach. Either party may terminate this **Lease**, without cause, upon thirty (30) days' notice. Upon material breach, the non-breaching party may terminate this **Lease** upon twenty-four (24) hours' notice or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow **Entertainer** to perform on the **Premises** without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws.

**19.** Severability. If any provision of this **Lease** is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease**; it being the intent of the parties that such part be, to the extent possible, severable from this **Lease** as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between **Entertainer** and the **Club** is something other than that of landlord and tenant, the relationship between **Entertainer** _ and the **Club** shall be controlled by the provisions of subparagraphs 12B and 12C.

**20.** Governing Law. This **Lease** shall be interpreted pursuant to the laws of the State of Nevada.

**21.** MANDATORY ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS.

    A.  EXCEPT FOR ANY ADMINISTRATIVE PROCEEDINGS THAT ARE NOT LEGALLY BARRED BY THIS PARAGRAPH, ANY

CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "FAA").  SUCH ARBITRATION SHALL OCCUR IN THE STATE OF NEVADA AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21, ANY RELIEF AVAILABLE IN A COURT.  THE ARBITRATOR SHALL NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIM, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDINGS.  IN THE EVENT AN ACTION IS BROUGHT IN ARBITRATION ON BEHALF OF MULTIPLE INDIVIDUALS, THE ARBITRATOR SHALL HAVE ONLY THE AUTHORITY TO DIVIDE THE ACTION INTO INDIVIDUAL PROCEEDINGS; EACH THEN TO BE HEARD BY AN INDIVIDUAL ARBITRATOR. EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY.  THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.  THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA.   THE COSTS OF ARBITRATION SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS THE ARBITRATOR CONCLUDES THAT A DIFFERENT ALLOCATION IS REQUIRED BY LAW.  THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS.  ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B.   ENTERTAINER AGREES THAT ALL CLAIMS BY HER AGAINST THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) SHALL BE BROUGHT AND MAINTAINED BY HER INDIVIDUALLY; THAT SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THOSE OF ANY OTHER INDIVIDUAL; THAT SHE WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT SHE MAY HAVE; AND THAT SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH IT.  IF AT ANY TIME ENTERTAINER IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING BARRED BY THESE PROVISIONS, SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY.

C.   IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.

D.   ANY RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT NOT PRECLUDED BY LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS, INCLUDING REASONABLE ATTORNEY FEES, TO THE PREVAILING PARTY.

E.   THE ARBITRATION PROVISIONS OF THIS PARAGRAPH 21 SUPERSEDE ANY PRIOR ARBITRATION AGREEMENT(S) ENTERED INTO BETWEEN THE CLUB AND THE ENTERTAINER.

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE EXPIRATION, TERMINATION, AND/OR CANCELLATION OF THIS LEASE.

This **Lease** is immediately terminated if **Entertainer** is not of legal age.  **Entertainer** specifically represents that she is of lawful age or older, that she has provided appropriate identification verifying her age, and that such identification is valid and authentic.

**BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT SHE HAS RECEIVED A COPY OF, AND HAS FULLY READ, THIS LEASE; THAT SHE UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF ITS TERMS; AND THAT SHE HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT AND HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.**

**"CLUB"**

Las Vegas Bistro, LLC
_____

**By:** _____
                    [signature]

STANLEY BRITO
_____
                [printed name]

**Its:**  VIPManager
_____
                [position]

**"PREMISES"**   3131 Ponderosa Way
_____
                [Club address]

Las Vegas
_____
            [City, state, zip code]

**DATE:**   7/5/2014  12:29:07AM
_____


**"ENTERTAINER"**

_____
                [signature]

krystal campbell
_____
                [printed name]

**REDACTED**
_____
                [stage name]

**REDACTED**
_____
                [address]

westland, mi, 48185
_____
            [City, state, zip code]

**REDACTED**
_____
[Entertainer's license/permit number — if applicable]

**REDACTED**
_____
        [Entertainer's I.D. number]

**<u>SPECIFICATIONS</u>**

Base rent:

$ _____ per **Day**          Show Date; $ _____ per **Night** Show Date

Additional rent (cross out if not applicable):

For each table dance:     $_____       For each couch dance:     $_____
For each specialty dance:     $_____

VIP room rent charge:     $_____       Scrip use administration charge: _____%

**Entertainer** contracts to perform during _____ (day or evening) entertainment sessions.

Lost rent charge:    Day Show Date missed: $_____ ;   Night Show Date missed: $_____

ADDITIONAL PROVISIONS:

_____
_____
_____
_____

# EXHIBIT 3

# EXHIBIT 3

# DANCER PERFORMANCE LEASE

**NOTICE: THIS IS A LEGAL CONTRACT.  DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS.  IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER.  WE SUGGEST THAT BEFORE SIGNING, YOU HAVE THIS CONTRACT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

This Dancer Performance Lease ("**Lease**") is entered into by the "**Club**" and "**Entertainer**" (the "**parties**") to permit **Entertainer** to use certain portions of the "**Premises.**"  The "**Club,**" "**Entertainer,**" and "**Premises**" are identified on the last page of this **Lease**.

## PURPOSE OF LEASE:

The **Club** operates an entertainment facility on the **Premises**. **Entertainer**, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services, desires to obtain the right to use certain areas of the **Premises** for her professional activities.

## TERMS OF LEASE:

**Club** and **Entertainer** agree as follows:

**1. Leasing of Premises/Term.**  The **Club** grants to **Entertainer** the right, during normal business hours, to jointly, along with other entertainers, use the stage areas and certain other portions of the **Premises** designated by the **Club**. This **Lease** begins today and ends on the earlier of: **A)** January 31, 2015; or **B)** a termination date as provided for in paragraph 18.

**2. Club's Additional Obligations.**  The **Club** shall:

    **A.**  Provide, at its own expense, music for use on the **Premises**, lighting, and dressing room facilities, and pay all copyright fees due relative to that music; and

    **B.**  Reasonably advertise the business for the benefit of both **Entertainer** and the **Club**.  This does not, however, prohibit Entertainer from advertising her services in any manner she so desires.

**3. Subleasing.**  This **Lease** is for **Entertainer's** personal skills and artistic talent.  Consequently, **Entertainer** has no right to sublease or to assign any of her rights or obligations in this **Lease** to any other person without the written consent of the **Club**. However, **Entertainer** has the right to substitute the services of any licensed (if legally required) entertainer who has also entered into a Dancer Performance Lease with the **Club**.

**4. Non-Exclusivity.**  **Entertainer's** obligations under this **Lease** are non-exclusive.  She is free to perform at any other businesses or venues.

**5. Use of Premises.**  **Entertainer** agrees to:

    **A.**  Perform clothed, as well as semi-nude ("topless") or nude (whichever is permitted by law) dance entertainment and to perform in stage rotations;

    **B.**  Obtain, keep in effect, and have in her possession at all times while she is on the **Premises**, any and all required licenses and/or permits;

    **C.**  Not violate any laws (violations of the law are beyond the scope of authority under, and constitute a breach of, this **Lease**);

    **D.**  Maintain accurate daily records of all income, including tips, earned while performing on the **Premises**, in accordance with all taxation laws;

    **E.**  Become knowledgeable of all laws that apply to **Entertainer's** conduct while on the **Premises**; and

    **F.**  Pay for any damages she causes to the **Premises** and/or to any of the **Club's** personal property.

**6. Compliance with Rules.**  The **Club** may impose rules upon the use of the **Premises** by **Entertainer** as the **Club** deems necessary in order to ensure that: A) no damage to the **Club's** property occurs; B) the **Premises** are used in a safe fashion for the benefit of all entertainers, patrons, and others; and C) no violations of the law occur.  **Entertainer** agrees to comply with all such rules, as well as with all rules established by a majority vote of **Entertainers** under lease with the **Club**.

**7. Nature of Performance and Costuming.**  The **Club** has no right to direct or control the nature, content, character, manner or means of **Entertainer's** entertainment services, her performances, or the costumes/wearing apparel she selects. **Entertainer** shall supply all of her own costumes and wearing apparel, which must comply with all applicable laws and shall be in accordance with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities.

**8. Intellectual Property.**  **Entertainer** retains all intellectual property rights to her performances, stage name and likeness, unless assigned by her in writing.

**9. Nature of Business.**  **Entertainer** understands: A) That the nature of the **Club's** business is adult entertainment; and B) that she may be subjected to either full or partial nudity (primarily female), explicit language, advances by customers, depictions or portrayals of a sexual nature, and to similar types

of behavior.  **Entertainer** represents that she is not and will not be offended by, and she assumes any and all risks associated with, being subjected to such matters.

**10.** **Privacy .**  Privacy and personal safety are important concerns to **Entertainer**.  Accordingly, the **Club** shall not knowingly disclose to any persons who are not associated with the **Club,** **Entertainer's** legal name, address, or telephone number, except upon written authorization of the **Entertainer** or as required by law. 

**11.** **Entertainment Fees .**  In consultation with entertainers who lease space on the **Premises**, the **Club** shall establish fixed fees as the price for certain personal performances ("**Entertainment Fees**").  **Entertainer** agrees not to charge a customer less than the fixed price for any such performance unless the **Entertainer** notifies the **Club** in writing of any charges to her customers of a lower amount.  Nothing in this **Lease**, however, limits **Entertainer** from receiving tips over-and-above the established price for such performances (**Entertainer** is not required to share her tips with anyone else).  THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR PURCHASING A PERSONAL ENTERTAINMENT PERFORMANCE.

**12.** **Business Relationship of Parties.**

    **A.**  The parties acknowledge that the business relationship created between them is that of the joint and non-exclusive leasing of certain parts of the **Premises** (meaning that other entertainers are also leasing parts of the **Premises** at the same time).  THE PARTIES SPECIFICALLY DISAVOW ANY      EMPLOYMENT RELATIONSHIP BETWEEN THEM, and this     **Lease** shall not be interpreted as creating an   employer/employee relationship or any contract for employment.  ENTERTAINER UNDERSTANDS THAT THE **CLUB** WILL NOT PROVIDE TO HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY,  EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.

    **B.**  The **Club** and **Entertainer** acknowledge that if the relationship between them was that of employer and employee, the **Club** would be required to collect, and would retain, all **Entertainment Fees** paid by customers to **Entertainer** — ENTERTAINER SPECIFICALLY ACKNOWLEDGING THAT IN AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL **ENTERTAINMENT FEES** WOULD BE,   BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE **CLUB** AND NOT THE PROPERTY OF **ENTERTAINER**.  **ENTERTAINER'S** RIGHT TO OBTAIN AND KEEP **ENTERTAINMENT FEES** IS SPECIFICALLY  CONTINGENT UPON THE 

BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LANDLORD AND TENANT.

Under an employment relationship, **Entertainer** would be paid on an hourly basis at a rate equal to the applicable minimum wage for non-insurance employees.  **Entertainer** would further be entitled to all retain tips — *but not* **Entertainment Fees** — that she may collect, although she would be required to pay 25% of her tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees.

The parties additionally acknowledge that were the relationship between them to be that of employer/employee, **Entertainer's** employment would be "at will" (she could be fired at any time without cause and without prior warning), and the **Club** could control, among other things, **Entertainer's**: Work schedule and hours of work; job responsibilities; physical appearance (such as make-up, hairstyle, etc.); costumes/wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at other locations. ENTERTAINER REPRESENTS THAT SHE DESIRES TO BE ABLE TO MAKE ALL OF THESE CHOICES HERSELF, WITHOUT THE CONTROL OF THE **CLUB**, AND THE PARTIES AGREE THAT ALL SUCH DECISIONS ARE EXCLUSIVELY RESERVED TO HER CONTROL.

ENTERTAINER FURTHER REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE **CLUB** UNDER THE TERMS OUTLINED ABOVE, BUT, RATHER, DESIRES TO PERFORM AS A TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS **LEASE.**

    **C.**  If any court, tribunal, arbitrator, or governmental agency determines, or if **Entertainer** at any time claims, that the relationship between the parties is one of employment and that **Entertainer** is then entitled to the payment of wages from the **Club**, all of the following shall apply:

    **i.**  In order to comply with applicable tax laws and to assure that the **Club** is not unjustly harmed and that **Entertainer** is not unjustly enriched by the parties having financially operated pursuant to this **Lease**, the parties agree that **Entertainer** shall surrender, reimburse and pay to the **Club**, all **Entertainment Fees** received by her at any time she performed on the **Premises** - all of which would otherwise have been collected and kept by the **Club** had they not been retained by **Entertainer** under the terms of this **Lease** - and shall immediately provide a full accounting to the **Club** of all tip income which she received

during that time;

    ii.   **Entertainer** shall immediately remit to the **Club** 25% of all tips that she earned while performing at the **Club**, which shall be distributed to non-dancer regularly tipped employees;

    iii.   Any **Entertainment Fees** that **Entertainer** does not return to the **Club** shall be deemed service charges paid by the customer and shall be accounted for by the **Club** as such. The **Club** shall then be entitled to a credit against any wages due in the amount of the **Entertainment Fees** retained by **Entertainer,** and such fees shall therefore constitute wages paid from the **Club** to **Entertainer**. In such circumstances, the **Club** shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income; and

    iv.   The relationship of the parties shall immediately convert to an employment arrangement under the terms in subparagraph 12B.

  **D.**  If at any time **Entertainer** believes that - - irrespective of the terms of this **Lease** - - she is being treated as an employee by the **Club** or that her relationship with the **Club** is truly that of an employee, **Entertainer** shall immediately, **but in no event later than three business days thereafter:** i) provide notice to the **Club** in writing of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(B) and applicable law; and ii) begin reporting all of her tip income to the **Club** on a daily basis (such tip reporting being legally required of all regularly tipped employees).

**13.** Taxes, **Entertainer** is exclusively responsible for, and shall pay, all applicable taxes and contributions imposed upon any income earned by **Entertainer** while performing on the **Premises.**

**14.** Scheduling of Performance Dates. **Entertainer** shall determine the days when she desires to utilize the **Premises** (each such day being one "Show Date"). **Entertainer** may, but need not, select, at least one week in advance, the days she desires to utilize the **Premises** during the following week. **Entertainer** may be permitted to lease space on the **Premises** on days and during weeks when she has not scheduled herself to perform, subject to space availability.

**Entertainer** contracts to perform during the entertainment sessions stated in the **"Specifications"** section of this **Lease.**

If **Entertainer** misses an entire scheduled Show Date, she agrees to pay to the **Club** no later than by the end of her next

Show Date, a lost rent charge as stated in the **"SPECIFICATIONS"** section. Lost rent charges are established in view of the fact that it would be difficult to determine the exact lost rent and damages incurred as a result of such breaches of this **Lease.**

**15.** Rent. **Entertainer** shall pay rent ("**Rent**") to the **Club** in amounts stated in the **"SPECIFICATIONS"** section. **Rent** shall be paid immediately upon completion of the Show Date for which it is due.

**16.** Material Breach by Club. The **Club** materially breaches this **Lease** by failing to provide to **Entertainer** the leased portions of the **Premises** on any day she schedules, or by willfully violating any law governing the operation of the **Club**. The **Club** shall not be liable for acts of G-d or other causes beyond its reasonable control.

**17.** Material Breach by Entertainer. **Entertainer** materially breaches this **Lease** by failing to maintain any and all required licenses and/or permits; willfully violating any law while on the **Premises**; failing to appear for a scheduled Show Date on two or more occasions in any one calendar month; failing to pay any **Rent** when due; failing to timely pay any assessed lost rent charges; or claiming the business relationship with the **Club** as being other than that of a landlord and tenant.

**18.** Termination/Breach. Either party may terminate this **Lease**, without cause, upon thirty (30) days' notice. Upon material breach, the non-breaching party may terminate this **Lease** upon twenty-four (24) hours' notice or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow **Entertainer** to perform on the **Premises** without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws.

**19.** Severability. If any provision of this **Lease** is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease**; it being the intent of the parties that such part be, to the extent possible, severable from this **Lease** as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between **Entertainer** and the **Club** is something other than that of landlord and tenant, the relationship between **Entertainer** and the **Club** shall be controlled by the provisions of subparagraphs 12B and 12C.

**20.** Governing Law. This **Lease** shall be interpreted pursuant to the laws of the State of Nevada.

**21.** MANDATORY ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS.

    **A.**   EXCEPT FOR ANY ADMINISTRATIVE PROCEEDINGS THAT ARE NOT LEGALLY BARRED BY THIS PARAGRAPH, ANY

CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "FAA"). SUCH ARBITRATION SHALL OCCUR IN THE STATE OF NEVADA AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21, ANY RELIEF AVAILABLE IN A COURT. THE ARBITRATOR SHALL NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIM, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDINGS. IN THE EVENT AN ACTION IS BROUGHT IN ARBITRATION ON BEHALF OF MULTIPLE INDIVIDUALS, THE ARBITRATOR SHALL HAVE ONLY THE AUTHORITY TO DIVIDE THE ACTION INTO INDIVIDUAL PROCEEDINGS; EACH THEN TO BE HEARD BY AN INDIVIDUAL ARBITRATOR. EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY. THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA. THE COSTS OF ARBITRATION SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS THE ARBITRATOR CONCLUDES THAT A DIFFERENT ALLOCATION IS REQUIRED BY LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B.   ENTERTAINER AGREES THAT ALL CLAIMS BY HER AGAINST THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) SHALL BE BROUGHT AND MAINTAINED BY HER INDIVIDUALLY; THAT SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THOSE OF ANY OTHER INDIVIDUAL; THAT SHE WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT SHE MAY HAVE; AND THAT SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH IT. IF AT ANY TIME ENTERTAINER IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING BARRED BY THESE PROVISIONS, SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY.

C.   IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.

D.   ANY RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT NOT PRECLUDED BY LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS, INCLUDING REASONABLE ATTORNEY FEES, TO THE PREVAILING PARTY.

E.   THE ARBITRATION PROVISIONS OF THIS PARAGRAPH 21 SUPERSEDE ANY PRIOR ARBITRATION AGREEMENT(S) ENTERED INTO BETWEEN THE CLUB AND THE ENTERTAINER.

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE EXPIRATION, TERMINATION, AND/OR CANCELLATION OF THIS LEASE.

This **Lease** is immediately terminated if **Entertainer** is not of legal age.  **Entertainer** specifically represents that she is of lawful age or older, that she has provided appropriate identification verifying her age, and that such identification is valid and authentic.

**BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT SHE HAS RECEIVED A COPY OF, AND HAS FULLY READ, THIS LEASE; THAT SHE UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF ITS TERMS; AND THAT SHE HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT AND HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.**

"CLUB"

Las Vegas Bistro, LLC

_____

**By:** _____
                    [signature]

BRITTANY CAROLLO
_____
                [printed name]

**Its:**  GM
_____
                [position]

**"PREMISES"**   3131 Ponderosa Way
_____
                [Club address]

Las Vegas
_____
                [City, state, zip code]

**DATE:** _____10/2/2014  1:35:14AM_____


"ENTERTAINER"

_____
                [signature]

SHANA RAGIN
_____
                [printed name]

REDACTED
_____
                [stage name]

# REDACTED
_____
                [address]

NEWNAN, GA, 3026
_____
                [City, state, zip code]

Pending
_____
[Entertainer's license/permit number — if applicable]

REDACTED
_____
                [Entertainer's I.D. number]

## SPECIFICATIONS

Base rent:

$ _____ per **Day**          Show Date; $ _____ per **Night** Show Date

Additional rent (cross out if not applicable):

For each table dance:     $_____          For each couch dance:     $_____
For each specialty dance:     $_____

VIP room rent charge:     $_____          Scrip use administration charge:     _____%

**Entertainer** contracts to perform during _____ (day or evening) entertainment sessions.

Lost rent charge:    Day Show Date missed: $_____ ;   Night Show Date missed: $_____

ADDITIONAL PROVISIONS:

_____
_____
_____
_____

# EXHIBIT 4

# EXHIBIT 4

1   Elayna J. Youchah, Bar No. 5837
    youchahe@jacksonlewis.com
2   Steven C. Anderson, Bar No. 11901
    steven.anderson@jacksonlewis.com
3   JACKSON LEWIS P.C.
    3800 Howard Hughes Parkway, Suite 600
4   Las Vegas, Nevada 89169
    Telephone: (702) 921-2460
5   Facsimile: (702) 921-2461

6   *Attorneys for Defendants*

7

                    **IN THE UNITED STATES DISTRICT COURT**
8                    **FOR THE DISTRICT OF NEVADA**

9   **KRYSTAL CAMPBELL, SHANA RAGIN,**
    **ASHLEIGH PARK, and JANE DOE**
10  **DANCER I through IV, individually, and on**          CIVIL ACTION NO.:
    **behalf of Class of similarly situated**
11  **individuals,**

12
              **Plaintiffs,**
13            **vs.**

14
    **DEAN MARTIN DR - LAS VEGAS,**
15  **LLC, a Nevada Limited Liability**
    **Company (d/b/a LARRY FLYNT'S**
16  **HUSTLER CLUB, a business**
    **organization form unknown), LAS**
17  **VEGAS BISTRO, LLC, a Nevada**
    **Limited Liability Company, MODERN**
18  **BOOKKEEPING, INC, a Michigan**
    **Corporation, DOE CLUB OWNER, I-X,**
19  **DOE EMPLOYER, I-X, ROE CLUB**
20  **OWNER, I-X, and ROE EMPLOYER, I-X,**

21
              **Defendants.**
22

23

24
                **DECLARATION OF KELLY JONES**
25       **IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

26

27   Kelly Jones, in accordance with 28 U.S.C. § 1746, hereby states and declares as follows:

28

                                      1

EXHIBIT 4
Page 1

1.   I am an adult resident of the State of Nevada.

2.   I am the General Manager of Las Vegas Bistro, LLC, dba *Larry Flynt's Hustler Club* ("Bistro" or the "Club"), at 6007 Dean Martin Drive, Las Vegas Nevada.  I have been the GM of the Club since 2013.  I have worked at the Club in other capacities since 2011.

3.   I make this declaration based on my personal knowledge, Bistro's business records which are created and maintained in the ordinary course of business, and upon my knowledge and experience as Bistro's General Manager.

4.   Bistro Utilizes "Clubtrax" point of sale (POS) computer software for recordkeeping and reporting functions, including sales and payroll.  The software also tracks the "Show Dates" of the independent professional entertainers who provide their exotic performance dance entertainment upon Bistro's premises.

5.   Bistro also utilizes Clubtrax electronic contract function for independent professional entertainers.  Clubtrax creates and maintains the "Business Status Selection by Entertainer" and "Dancer Performance Lease" documents completed by each entertainer who performs on Bristro's premises.

6.   Bistro contracts with an entertainer after an audition and after a manager determines that the entertainer possesses the necessary skill to perform as an entertainer.  To contract with an entertainer, a Club manager accompanies the entertainer to a POS terminal.  The process begins when the manager logs into the POS terminal and scans the entertainer's photographic driver's license or other identification.  The entertainer's information from her identification is automatically imported into the system.  The manager fills in any information that is not automatically imported.  Next, the entertainer's sheriff's card is

EXHIBIT 4
Page 2

scanned in and the number is input manually by the manager.  If available, a social security card will also be scanned in.

7.    The manager then selects the on-screen "tab" for the Business Status Selection by Entertainer document.  POS terminal then displays the document on screen for the entertainer to review.  The manager reviews the selection document with the entertainer and a hard copy is made available if the entertainer prefers.  After the entertainer reviews the Business Status Selection by Entertainer document she uses a mouse to select or instructs the manager to select for her either "I would like to apply to be an Independent Professional Entertainer" or "I would like to apply for a position as an Employee entertainer."  The manager then selects the on-screen signature button and the entertainer is prompted to sign using an electronic signature pad.  The Clubtrax system then saves the entertainer's selection, her signature, and the current date and time.

8.    If an entertainer selects that she would like to perform as an Independent Professional Entertainer and signs, the manager then selects the on-screen "tab" for the Dancer Performance Lease.  The Dancer Performance Lease then appears on screen for the entertainer to review.  The manager reviews the Dancer Performance Lease with the manager and a hard copy is made available if she prefers.  After the entertainer has reviewed the document, the manager selects the on-screen signature button and the entertainer signs using the electronic signature pad.  Next, the manager selects the "button" to sign on behalf of the Club and signs.  The Clubtrax system saves the entertainer's signature, the manager's signature, and the current date and time.  The manager then prints the entertainer's completed Business Status Selection by Entertainer

3

EXHIBIT 4
Page 3

and Dancer Performance Lease, and gives it to her.  The entertainer's fingerprint is then scanned into the system.

9.  The Business Status Selection by Entertainer and Dancer Performance Lease documents for each entertainer are regularly created and electronically maintained by Bistro in its regular course of business.

10.  Each time an entertainer arrives to perform on the premises, she notifies a Bistro employee and signs in using her fingerprint.

11.  An entertainer cannot be checked in on the Clubtrax system unless she has a current Business Status Selection by Entertainer and Dancer Performance Lease on file with the Club.  If the entertainer's sheriff's card or Dancer Performance Lease has expired, the Clubtrax system automatically changes her to "inactive" in the system and a prompt will appear when she attempts to sign in.  The entertainer will not be permitted to sign in until any expired or missing documents are remedied.  This operates as a failsafe to ensure that no entertainer is permitted to perform on the premises until she has a current Business Status Selection by Entertainer, Dancer Performance Lease, and sheriff's card on file with the Club.  By law, an entertainer must have a current sheriff's card to perform on the premises.

12.  All entertainers must sign a Dancer Performance Lease before they are permitted to perform on the premises.  I am confident that no entertainer has performed at Bistro without first completing a Business Status Selection by Entertainer and Dancer Performance Lease.

13.  I have reviewed the Dancer Performance for Ashleigh Park marked as Exhibit 1; the Dancer Performance Lease for Krystal Campbell marked as Exhibit 2; and the Dancer

4

**EXHIBIT 4**
**Page 4**

performance lease for Shana Ragin Marked as Exhibit 3, which I understand will

submitted contemporaneously with this declaration in in support of Bistro's motion to

compel arbitration. These documents are true and accurate reproductions of the Dancer

Performance Leases executed by those individuals, which are electronically maintained

by Bistro.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND

CORRECT.

Executed on: March _18_, 2015

_Kelly Jones_
Kelly Jones

5

EXHIBIT 4
Page 5

# EXHIBIT 5

# EXHIBIT 5



Representing Management Exclusively in Workplace Law and Related Litigation

**Jackson Lewis P.C.**
3800 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169
Tel 702 921-2460
Fax 702 921-2461
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | GRAND RAPIDS, MI | MORRISTOWN, NJ | RALEIGH-DURHAM, NC |
| ALBUQUERQUE, NM | GREENVILLE, SC | NEW ORLEANS, LA | RAPID CITY, SD |
| ATLANTA, GA | HARTFORD, CT | NEW YORK, NY | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NORFOLK, VA | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | OMAHA, NE | SAINT LOUIS, MO |
| BIRMINGHAM, AL | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN DIEGO, CA |
| BOSTON, MA | LAS VEGAS, NV | ORLANDO, FL | SAN FRANCISCO, CA |
| CHICAGO, IL | LONG ISLAND, NY | PHILADELPHIA, PA | SAN JUAN, PR |
| CINCINNATI, OH | LOS ANGELES, CA | PHOENIX, AZ | SEATTLE, WA |
| CLEVELAND, OH | MEMPHIS, TN | PITTSBURGH, PA | STAMFORD, CT |
| DALLAS, TX | MIAMI, FL | PORTLAND, OR | TAMPA, FL |
| DENVER, CO | MILWAUKEE, WI | PORTSMOUTH, NH | WASHINGTON, DC REGION |
| DETROIT, MI | MINNEAPOLIS, MN | PROVIDENCE, RI | WHITE PLAINS, NY |

March 17, 2015

<u>**VIA EMAIL**</u>

Ryan Anderson
Bighorn Law
2001 S. Maryland Pkwy
Las Vegas, NV 89104
ryan@morrisandersonlaw.com

Re: *Campbell et al. v. Dean Martin Dr – Las Vegas, LLC et al.*, A-14-709417-C

Dear Mr. Anderson:

As you know, Jackson Lewis P.C. represents the defendants in the above referenced litigation. I am following up on prior correspondence sent from my colleague Matt Hoffer regarding the mandatory arbitration clause contained in the attached agreements your clients have executed in conjunction with their business relationship with defendants. These documents were previously provided to you on February 23rd and 26th. Despite the lapse of three weeks, you still have not indicated whether you will submit to arbitration as the agreements require.

As clearly outlined in these documents your clients have agreed to arbitrate this dispute. Recent United States Supreme Court precedent has upheld the binding nature of such agreements. Nevada's federal court has recently followed this precedent and compelled arbitration in a similar setting. *See e.g., Siy v. CashCall, Inc.*, 2014 U.S. Dist. LEXIS 1472 (D. Nev. Jan. 6, 2014). Please confirm whether you are agreeable to having your clients arbitrate this dispute as dictated by the agreements they executed and the controlling case law.

Sincerely,

Steven C. Anderson

cc:   Matt Hoffer
        Jaqueline Bretell
        Michael Rusing

Enclosures

**EXHIBIT 5**
**Page 1**